UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EDWARD DOTSON          :
                       :    Case No. 05-cv-1747 (EGS)
v.                     :
                       :
U.S. PAROLE COMMISSION :
                       :

**U.S. PAROLE COMMISSION'S OPPOSITION TO
PETITIONER'S *PRO SE* PETITION FOR WRIT OF *HABEAS CORPUS*__**

The United States Parole Commission, through its attorney, the United States Attorney for the District of Columbia, hereby respectfully opposes petitioner's *pro se* petition for writ of *habeas corpus*. In support of its opposition, the United States submits the following:

**PROCEDURAL HISTORY**

On June 24, 1982, petitioner was sentenced to 14 to 42 months of incarceration on a Felony Bail Reform Act violation, in Case Number F-6786-81C. *See* Exhibit One (Judgment and Commitment Order, June 24, 1982). On that date, petitioner was also sentenced to a prison term of seven to 21 years for Armed Robbery, in Case Number F-4866-81C, which was to be served consecutively to the sentence that was issued in F-6786-81C. *See* Exhibit Two (Judgment and Commitment Order, June 24, 1982). Petitioner was also sentenced to a concurrent five to 15-year prison term for Robbery in F-4867-81B. *See* Exhibit Three (Judgment and Commitment Order, 06/24/82). The Department of Corrections ("DOC") determined that petitioner's full term expiration date would be January 15, 2006. *See* Exhibit Four (Face Sheet).[1]

---

[1] On July 1, 1990, petitioner was also sentenced to sixty days of incarceration for Unlawful Possession of Cocaine in Case Number M-1180-90A. *See* Exhibit Five (Judgment and Commitment Order, July 11, 1990).

On June 17, 1993, the District of Columbia Board of Parole ("Parole Board") ordered that petitioner be placed on parole.  *See* Exhibit Six (Certificate of Parole).  However, on November 9, 1993, the Parole Board issued a parole violator warrant for petitioner's arrest.  *See* Exhibit Seven (Warrant, November 9, 1993).  Petitioner was arrested on that warrant on February 8, 1994.  *Id*.  A revocation hearing was held in petitioner's case on April 12, 1994, and his parole was revoked on April 15, 1994.  *See* Exhibit Eight (Record of Parole Hearing, April 12, 1994).  When petitioner's parole was revoked, the Parole Board determined that he should be considered for re-parole on April 12, 1996.  *See* Exhibits Eight and Nine (Record of Parole Hearing and Notice of Board Order, April 12, 1994).

On July 12, 1994, three months after petitioner's parole was revoked, petitioner was sentenced to a concurrent 30 to 90-month period of incarceration for Attempted Distribution of Cocaine in Case Number F-11605-93F.  *See* Exhibit 10 (Judgment and Commitment Order, July 12, 1994).  Consequently, petitioner's full term expiration date for his sentence was scheduled for October 6, 2006.  *See* Exhibit 11 (Face Sheet, July 26, 1994).

On September 25, 1997, petitioner was ordered to be placed on parole.  *See* Exhibits 12 and 13 (Certificate of Parole and Release Verification Report, September 25, 1997).  However, the Parole Board issued a parole violator warrant for petitioner's arrest on April 29, 1999, and petitioner was arrested on the parole warrant on May 19, 1999.  *See* Exhibit 14 (Warrant, April 29, 1999).  A revocation hearing was held in petitioner's case on June 30, 1999, petitioner's parole was revoked on July 20, 1999, and the Parole Board ordered that petitioner be considered for re-parole by February 19, 2000.  *See* Exhibits 15 and 16 (Record of Revocation Hearing, June 30, 1999; Notice of Board Order, July 20, 1999).

On September 14, 2001, petitioner was placed on parole by the U.S. Parole Commission ("Parole Commission"), and he was ordered to be under supervision until December 30, 2010. *See* Exhibit 17 (Certificate of Parole, September 14, 2001).[2]  This full-term expiration date established by the Bureau of Prisons on September 6, 2001.  *See* Exhibit 18 (Sentence Monitoring Computation Data, p. 5).  However, on August 7, 2002, the Parole Commission issued a parole violator warrant for petitioner's arrest, and petitioner was arrested on August 28, 2002.  *See* Exhibits 19 and 20 (Warrant Application; Warrant).  Petitioner's parole revocation hearing was held on October 9, 2002, and the Parole Commission made the following decisions on October 12, 2002: 1) petitioner's parole was revoked; 2) petitioner would not receive credit for the time he had previously spent on parole; and 3) petitioner was ordered to be on presumptive parole after serving 24 months in jail.  *See* Exhibit 22 (Notice of Action, October 12, 2002).

Petitioner was placed on parole on August 28, 2004, he was to remain under supervision until October 19, 2008.  *See* Exhibits 23 and 24 (Certificate of Parole, August 28, 2004; Sentence Monitoring Computation Data, August 3, 2004, p. 2).  On March 11, 2005, the Parole Commission issued a parole violator warrant for petitioner.  *See* Exhibits 25 and 26 (Warrant Application and Warrant, March 11, 2005).  Petitioner was arrested on the warrant on May 6, 2005, and a parole revocation hearing was held in his case on July 18, 2005.  *See* Exhibits 27 and 28 (Warrant Return, May 6, 2005; Hearing Summary, July 19, 2005).  In a Notice of Action

---

[2] The National Capital Revitalization and Self-Government Improvement Act of 1997, Public Law No. 105-33, §§ 11231(a)(1), 111 Stat. 712, 745 (effective August 5, 1998) ("Revitalization Act"); D.C. Code § 24-131 (formerly § 24-1231), transferred the functions of the D.C. Board of Parole to the U.S. Parole Commission, and transferred jurisdiction over D.C. Code offenders to the Commission.

of July 25, 2005, the Parole Commission notified petitioner of the following decisions: 1) his parole was revoked; 2) he would not receive credit for any of the time that he had spent on parole; 3) he would be eligible for re-parole on March 26, 2006, after serving 12 months of incarceration. *See* Exhibit 29 (Notice of Action, July 25, 2005). Though petitioner was informed, through the Notice of Action, of his right to appeal the Parole Commission's decisions, petitioner did not file an appeal.

According to the Bureau of Prisons, petitioner's full-term expiration date is now June 27, 2009, and his projected mandatory release date for good time credit, if he is not re-paroled, is July 14, 2008. *See* Exhibit 30 (Sentence Monitoring Computation Data, November 17, 2005, p.2).

## ARGUMENT

### 1. Introduction

Petitioner raises two claims for *habeas* relief in his petition. First, he argues that the Parole Commission lacked jurisdiction to revoke his parole in July 2005, because his sentence expired in March 2005. Petitioner also claims that the Parole Commission's denial of good time credits that petitioner had previously earned violates several of petitioner's Constitutional rights, as well as guaranteed rights he received under District of Columbia law. Each of petitioner's habeas claims are without merit and they should be denied.

### 2. Parole Commission Had Jurisdiction to Revoke Petitioner's Parole In July 2005.

Petitioner claims that his sentence should have expired in March 2005; therefore the Parole Commission lacked jurisdiction when it revoked his parole in July 2005. Motion at p. 13. Petitioner's claim is without merit and it should be summarily denied.

4

Petitioner is presently serving the remainder of a seven to 21-year prison sentence for Armed Robbery, as well as several other prison sentences for other offenses. Therefore, petitioner's aggregate sentence will go beyond March 2005, which is the date petitioner believes his sentence should have expired. A sentence that is part of an aggregate of multiple sentences does not expire independently of the other terms. *See, McCray v. U.S. Board of Parole*, 542 F.2d 558, 560 (10th Cir. 1976) (consecutive sentences do not expire independently of one another, and they are not subject to separate mandatory release dates); *Gill v. U.S. Parole Commission*, 692 F.Supp. 623, 626 (E.D.Va. 1988) (citing *McCray*); *see also Chatman-Bey v. Meese*, 797 F.2d 987, 994 (D.C. Cir. 1986); *Goode v. Markley*, 603 F.2d 973 (D.C. Cir. 1979) (approving the aggregation of U.S. Code and D.C. Code sentences for the purpose of sentence calculations). The DOC, upon considering all of petitioner's sentences that were imposed in 1982, determined that petitioner's full-term expiration date would be January 15, 2006. Since petitioner had been sentenced to other offenses after 1982, and his parole had been revoked numerous times, his full-term date was scheduled for October 19, 2008, as he began his fourth term of parole in August 2004.[3] Therefore, the Parole Commission had proper jurisdiction over petitioner when it revoked his parole in July 2005. Accordingly, his *habeas* claim on this ground should be denied.

---

[3] Petitioner lost credit for time spent on parole as a result of each parole revocation. *See Noble v. U.S. Parole Commission*, 194 F.3d 152 (D.C. Cir. 1999), *citing, United States Parole Commission v. Noble*, 693 A.2d 1084 (D.C. 1997), *aff'd* 711 A.2d 85 (D.C. 1998) (en banc) (holding that D.C. statutory law required the forfeiture of time spent on parole if parole was revoked).

### 3. Petitioner's "Good Time" Credits Do Not Reduce His Sentence And They Are Forfeited Each Time His Parole Is Revoked

Petitioner's claim that he is entitled to credit for previously-earned good time should also be denied. It is well-settled law that good time credits, such as those governed by the D.C. Good Times Credit Act of 1986, D.C. Code § 24-201.29 (formerly § 24-428), do not reduce the full-term date of the sentence.[4] Rather, good time credits only set the mandatory release date if the prisoner has not been previously paroled. Good time credits are "applied to the person's minimum term of imprisonment to determine the date of eligibility for release on parole and to the person's maximum term of imprisonment to determine the date when release on parole becomes mandatory." D.C. Code § 24-201.29 (formerly § 24-428(b)). Thus, these good time credits essentially affect either when a prisoner becomes eligible for release on parole or when he must be released on parole. Once such a prisoner is released to supervision in the community, whether as a result of a discretionary parole grant or mandatory release, the legal benefit of the good time is used up and has no further effect on the calculation of the prisoner's sentence. The Parole Commission's position on the relationship between parole and good time credit is codified at 28 C.F.R. §2.35(b):

> It is the Commission's interpretation of the statutory scheme for parole and good time that the only function of good time credits is to determine the point in a prisoner's sentence when, in the absence of parole, the prisoner is to be conditionally released on supervision, as described in subsection (a). Once an offender is conditionally released from imprisonment, either by parole or mandatory release, the good time earned during that period of imprisonment is of no further benefit either to shorten the period of supervision or to shorten the period of imprisonment which the offender may be required to serve for violation of parole or mandatory release.

---

[4]The Good Time Credit Act was repealed on August 20, 1994 but is applicable to the petitioner's sentence.

6

Moreover, there is an extensive body of case law that supports the forfeiture of the good time credits in this case. Indeed, in *Jones v. Clemmer*, 163 F.2d 852 (D.C. Cir. 1947), the Court of Appeals rejected the contention that a prisoner had achieved commutation of his sentence through good time credits earned before and during parole, stating that "any right to commutation" which the prisoner had previously earned (prior to revocation of his parole and resumption of his sentence) "was forfeited by his violation of parole." *Id*. at 853; *see also Bates v. Rivers*, 323 F.2d 311, 312 (D.C. Cir. 1963) (citing *Jones*). Likewise, the Fourth Circuit Court of Appeals, relying on District of Columbia law, has held that a prisoner's release based on good time credits, "as in the case of parole, is conditioned on good behavior," and may be "forfeited for breach of condition." *Hall v. Welch*, 185 F.2d 525, 526 (4th Cir. 1950) (citing *Bragg v. Huff*, 118 F.2d 1006 (4th Cir. 1941)). Moreover, in *U.S. Parole Commission v. Noble*, 693 A.2d 1084 (D.C. 1997), the D.C. Court of Appeals explicitly noted that the City Council had originally included a provision in the Good Times Credit Act which stated that a revoked parolee would not forfeit any good time credits earned prior to his revocation, but deleted this provision from the final version of the bill, so that re-incarcerated parolees could earn good time credits solely on the basis of the balance of the sentence after revocation of parole. *Id*. at 1091-92 & n.12; *see also Teachey v. Carver*, 736 A.2d 998, 1006 n.12 (D.C. 1999) (noting that where defendant had violated parole, he had "no valid claim for restoration of good time credits"). Accordingly, the petitioner's good time credits previously earned were properly forfeited upon his prior parole revocations.

District of Columbia statutory law also supports the Parole Commission's position in this matter.[5]  Under D. C. Code § 24-404 (formerly § 24-204) "while on parole, a prisoner shall remain in the legal custody and under the control of the Attorney General of the United States or his authorized representative until the expiration of the maximum of the term or the terms specified in his sentence <u>without regard to good time allowance</u>." D.C. Code § 24-404(a) (emphasis added).  This statutory provision indicates that good time credits are not counted in calculating the full term expiration date of the paroled prisoner's sentence.  If the parole is revoked, § 24-406 (formerly § 24-206) provides that "the prisoner, unless subsequently re-paroled, shall serve the remainder of the sentence originally imposed less any commutation for good conduct which may be earned by him <u>after his return to custody</u>." *Id*. (emphasis added). This directive concerning credit against the prison sentence limits the grant of good time credit to good time earned after the prisoner is returned to custody as a parole violator.  In sum, petitioner is not entitled to sentence credit for good time that he earned during previous periods of confinement.  With each parole release, the parole grant negated the sole purpose of the good time credits petitioner earned during the period of imprisonment from which he was discharged, and these credits had no further effect on the calculation of petitioner's sentence.  Following his last parole in August 2004 and the revocation of that parole, petitioner is only entitled to good time earned since his re-incarceration in May 2005.  The latest sentence computation from the Bureau of Prisons shows that petitioner has been credited with good time since his re-incarceration this year in accordance with D.C. Code §24-406.  Accordingly, petitioner's habeas

---

[5]  The Commission is required to follow D.C. parole laws in carrying out its responsibilities for parole-eligible D.C. offenders.  *See* D.C. Code §24-131(c).

claim on this ground should also be summarily denied.

## CONCLUSION

For the foregoing reasons, the record conclusively demonstrates that petitioner is not entitled to relief on his claims, and thus this Court summarily should deny Petitioner's petition for a writ of habeas corpus.

Respectfully submitted,

KENNETH L. WAINSTEIN
United States Attorney

ROBERT D. OKUN
Chief, Special Proceedings Section


_____/s/_____
TRICIA D. FRANCIS
D.C. Bar 457800
Assistant United States Attorney
555 Fourth Street, N.W., Tenth Floor
Washington, D.C. 20530
(202) 353-9870

CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this 22nd day of November, 2005, a copy of the foregoing pleading was served via U.S. mail on petitioner Edward Dotson, *pro se*, postage prepaid, at the following address:

Edward Dotson
Reg. Number 06475-016
FCI Allenwood Medium
Federal Correctional Institute
P.O. Box 2000
White Deer, PA 17887

_____/s/_____
ASSISTANT UNITED STATES ATTORNEY